Roy W. HABECK, Trustee for the heirs and next-of-kin of Adam R. Habeck, decedent, Respondent,

v.

Stephen OUVERSON, Defendant,

Mille Lacs County Agricultural Society, et al., Appellants.

No. C1–02–2154.

Court of Appeals of Minnesota.

Oct. 14, 2003.

Howard P. Helgen, Helgen & Helgen, P.A., Coon Rapids, MN, for respondent.

Stephen G. Andersen, Mark Jared Girouard, Ratwik Roszak & Maloney, Minneapolis, MN, for appellants.

Considered and decided by KLAPHAKE, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This wrongful-death action stems from a child's death by a tractor-trailer used to transport county fair visitors within the county fairgrounds. Appellants, the county fair board and the tractor-trailer driver, challenge the district court's denial of their immunity defense under the recreational-use immunity statute, Minn.Stat. § 466.03, subd. 6e (2002). Because we conclude the fair-board-sponsored transportation of fair visitors within the fairgrounds is a recreational service, we reverse and remand.

## FACTS

The Mille Lacs County Fair, which takes place on the Mille Lacs County Fairgrounds, is organized by appellant Mille Lacs County Agricultural Society (the Fair Board). In 1997, to transport fair visitors within the fair grounds, Stephen Ouverson, a Fair Board member, added benches to his trailer and pulled it behind his tractor. The front section of the trailer contained wooden benches and was intended for adult riders, while the rear section contained hay bales and was intended for children. Between the two sections were a rear axle and wheels, which were beneath wheel covers. The Fair Board used the tractor-trailer again at the 1998 fair.

On August 8, 1998, appellant Roland Keena, the fair's groundskeeper, agreed to drive the tractor-trailer. Although no one witnessed the incident itself, at some point late that afternoon, the tractor-trailer's rear wheels ran over six-year-old Adam Habeck. He died from massive head injuries. An investigation concluded that Adam had apparently fallen from the wagon. The medical examiner and the county attorney determined that the death was accidental, and the county attorney found no indication that the child was pushed from the wagon or that the driver was driving negligently or carelessly.

Respondent Roy W. Habeck, acting as trustee for Adam's heirs and next-of-kin,

sued the Fair Board, Ouverson and Keena. Habeck alleged that the Fair Board had negligently supervised visitors who rode on the tractor-trailer, that Ouverson had negligently designed the tractor-trailer, and that Keena had negligently operated the tractor-trailer.

All parties moved for summary judgment. The Fair Board, Ouverson, and Keena argued that they were protected from liability under the recreational-use immunity statute, Minn.Stat. § 466.03, subd. 6e (2002), and as an uncompensated board member, Ouverson also argued that he was entitled to immunity under Minn. Stat. § 38.013 (2002).

On September 27, 2002, the district court granted summary judgment to Ouverson but denied summary judgment to the Fair Board and Keena. The Fair Board and Keena requested reconsideration by the district court and filed a notice of appeal to this court. The district court granted the request for reconsideration, and this court consequently dismissed the pending appeal, returning jurisdiction to the district court. After the district court affirmed its prior decision in all respects, this court reinstated the Fair Board and Keena's appeal on the issue of the district court's denial of the recreational-use immunity-based motion for summary judgment. Respondent's notice of review, pertaining only to his claims against Ouverson, was not reinstated.

## ISSUE

Are a county fair board and groundskeeper entitled to recreational-use immunity where a fair visitor is fatally injured by a tractor-trailer used to transport visitors within the fairgrounds?

## ANALYSIS

On appeal from summary judgment, this court asks (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A summary judgment order denying an immunity defense is immediately appealable because immunity from suit is lost if a case is erroneously allowed to go to trial. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832–33 (Minn. 1995). Whether a municipality is protected by statutory immunity is a question of law, which an appellate court reviews de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996).

A municipality, which includes a county agricultural society and its agents, is generally liable for its torts. Minn.Stat. §§ 466.01, subds. 1, 6, .02 (2002). But such liability does not apply to

> [a]ny claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services, ... if the claim arises from a loss incurred by a user of park and recreation property or services.

Minn.Stat. § 466.03, subd. 6e (2002). This exception to liability, referred to as recreational-use immunity, if applicable, does not completely absolve state agencies from liability, but it "enables them to treat visitors, in the tort context, as trespassers rather than licensees or invitees." *Fear v. Indep. Sch. Dist. 911*, 634 N.W.2d 204, 213 (Minn.App.2001) (citation omitted), *review denied* (Minn. Dec. 11, 2001). The party asserting an immunity defense bears the burden to demonstrate that it is entitled to that immunity. *Bloss v. Univ. of Minn. Bd. of Regents*, 590 N.W.2d 661, 664 (Minn.App.1999).

The relevant portion of the statute extends immunity only to the operation and maintenance of property "that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services." Minn.Stat. § 466.03, subd. 6e. Minnesota courts interpreting the statute have found that places such as lakes, parks, and artificial ponds are properties covered by the statute. *See, e.g., Johnson v. Washington County,* 518 N.W.2d 594, 597 (Minn.1994) (concluding immunity existed where lifeguards provided recreational services as part of operation of park); *Stiele ex rel. Gladieux v. City of Crystal,* 646 N.W.2d 251, 253–54 (Minn.App.2002) (noting that it was undisputed that city park was covered property); *Lloyd v. City of St. Paul,* 538 N.W.2d 921, 923 (Minn.App.1995) (concluding immunity existed where paddle-boat operator at city park negligently operated boat), *review denied* (Minn. Dec. 20, 1995); *Zacharias v. Minn. Dep't of Natural Resources,* 506 N.W.2d 313, 315–16 (Minn. App.1993) (deciding that artificially created swimming pond in state park falls within immunity provision), *review denied* (Minn. Nov. 16, 1993). While the statute contains no explicit limitation on what may be considered a recreational area, the plain meaning of the statute encompasses the county-owned land and county-approved use of the property for an activity recreational in nature and attended by the public or paying customers, like the county fairgrounds. *See Merchlewitz v. Midwest 4 Wheel Drive Ass'n,* 587 N.W.2d 652, 656 (Minn.App.1999) (determining immunity covered city-approved event on city-owned property); *see also Lundstrom v. City of Apple Valley,* 587 N.W.2d 517, 519 (Minn. App.1998) (determining that tennis courts were "recreational area" because they were operated and maintained by city).

## A. Loss Incurred by User of Tractor-Trailer

■ Appellants argue that the district court erred in its conclusion that recreational-use immunity does not cover injuries from personalty such as a tractor-trailer, but that it addresses only claims regarding the real property itself and items "intricately connected to realty." The court focused on the word "property" in the statutory phrase limiting liability to claims arising "from a loss incurred by a user of park and recreation property or services." Minn.Stat. § 466.03, subd. 6e. The district court relied on several foreign cases when it narrowly defined the term "property" to mean "real estate itself, or fixtures or appurtenances intrinsically associated with real estate" and excluded the tractor-trailer. Similarly, respondent cites foreign case law construing other states' immunity statutes. We decline to follow these authorities to construe Minnesota's recreational-use immunity statute.

■ The Minnesota statute specifically covers claims arising from a "loss incurred by a user of park and recreation property or services." *Id.* Minnesota case law provides no support for the district court's narrow interpretation of the statutes. Recreational-use immunity under subdivision 6e covers claims arising from alleged negligence based on the provision of recreational services and unrelated to the condition of the recreational property. *See, e.g., Lloyd,* 538 N.W.2d at 923 (immunity where operator tipped paddleboat, injuring passenger); *Zacharias,* 506 N.W.2d at 315–16 (immunity for claims of negligent supervision where boy drowned in artificially created pond). The negligent operation of the paddleboat in *Lloyd* and the negligent supervision in *Zacharias,* as in the alleged negligent operation of the tractor-trailer, were not prefaced on the defective condition of the real property, but the recre-

ational services provided. Therefore, the district court erred in its conclusion that the recreational-use immunity statute does not provide immunity to the Fair Board and its agent for losses arising out of the use of a tractor-trailer for transportation at a county fair.

## B. Appropriate Trespasser Standard

■ Immunity through the recreational-use statute does not completely absolve the Fair Board and its agent from liability. Liability for its treatment of visitors, however, falls under trespasser liability, rather than licensee or invitee liability. *Fear*, 634 N.W.2d at 213. In denying summary judgment, the district court did not reach the issue of which standard of trespass was applicable: the general standard under Restatement (Second) of Torts § 335 (1965), or the more rigorous child-trespasser standard under Restatement (Second) of Torts § 339 (1965).[1]

The Fair Board argues that section 339 does not apply here because the claim involves the operation of machinery rather than the land itself and because "child-proofing" the fairgrounds would be impracticable. Minnesota courts have long recognized section 339 as the successor to the attractive-nuisance doctrine to abolish the "idea of invitation * * * as condition precedent to liability in the case of young children injured." *Gimmestad v. Rose Bros.*, 194 Minn. 531, 536–37, 261 N.W. 194, 196 (1935) (interpreting predecessor to section 339). With facts similar to those here, the Minnesota Supreme Court affirmed a jury verdict that the child-trespasser standard applied where a child fell off of the tongue of a wagon and was run over by the wagon's wheel. *Middaugh v. Waseca Canning Co.*, 203 Minn. 456, 458, 281 N.W. 818, 819 (1938). More recently, this court held that the child-trespasser standard was appropriate where children were allowed to play on snow piles outside their school during recess. *Fear*, 634 N.W.2d at 214.

■ We believe that the facts here are also properly analyzed under section 339. Children were allowed to play on the rear portion of the trailer, near the wheels, and that portion was designed for use by children. It is true that the child-trespasser standard is not appropriate in situations that "may reasonably be expected to be understood and appreciated by any child of an age to be allowed at large." *Sirek ex rel. Beaumaster v. State, Dep't of Natural Resources*, 496 N.W.2d 807, 811 (Minn. 1993) (quoting Restatement (Second) of Torts § 339 cmt. j (1965)). But here, although Adam's parents were on the fairgrounds, they were not with him when he fell off the tractor-trailer. Further, the dangers of sitting near the rear wheels of a trailer would not be readily apparent to a six-year-old child, especially when the rear

---

1. The text of Restatement (Second) of Torts § 339 is as follows:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

portion of the trailer was intended for, and primarily used by, children. Accordingly, application of the child-trespasser standard is appropriate.

## DECISION

Because the district court erred in its conclusion that the recreational-use immunity statute does not cover the fair-board-sponsored transportation of county fair visitors within the fairgrounds as a recreational service, we reverse and remand. On remand, the district court shall apply the child-trespasser standard in determining whether the appellants are liable.

**Reversed and remanded.**